O’Neall, J.
The questions made in this case may .be referred to three general heads, to wit: 1. The competency of the witness, Lydia Huey. 2. The liability of the representatives of her (deceased) husband, John Huey, to account for the funds of William Blackburne, (deceased,) which came to his hands, during the coverture of the said Lydia. 3. The propriety of the allowance of the counsel fee to the defendants’ solicitor out of the funds of Wm. Blackburne, (deceased). These subjects of inquiry embrace all the grounds of appeal taken by the complainants as well as the defendants ; and will be considered and decided in their order.
1. The fact of being partieeps criminis, will not render a witness incompetent to testify for or against the other parlies : it generally goes to the credit and not the competency: it is *true that when the witness’s testimony would subject him to punishment or infamy, he may decline to answer the questions propounded to him. But this is the protection of the witness; it would be no objection in the mouth of either plaintiff or defendant. A party to a deed, contract or other matter, is a* *278 competent witness unless disqualified by interest in the event, or in the record as matter of evidence. Knight v. Packhard, 3 M’C. 71.
To determine on the competency of the witness, Lydia Huey, it is necessary to inquire as to her interest in the event of the suit to be produced by her testimony. For although she is a defendant, and at law could not be sworn, yet in equity the rule is, that she is competent if she have no interest in the point to which her testimony is directed. Wright v. Wright, 2 M’C. C. R. 105; Farr v. Sims, et al., decided at this place, January Sittings, (in Equity,) 1832.
There is, I think, no doubt that she, as well as her late husband, Huey, is chargeable with the fund in question, and a decree against him, would not of itself discharge her: Adair v. Shaw, 1 Sch. & Lef. 255. It must be accompanied with satisfaction to have such an effect against the claims of the complainants. I think she might have been a witness for the complainants without a release. For her evidence, establishing the liability of John Huey, would not of itself discharge her: it only subjects his estate to a concurrent, but not a paramount liability, and hence she had no direct pecuniary interest in the event of the suit, or in the record as matter of evidence.
But if there is a doubt on the position assumed, there can be none as to her competency if she has been properly released. This depends upon the power of Thomas Blackburne legally to release her.
It seems that the complainant, Capehart, assigned his wife’s interest to Thomas Blackburne, who is the guardian of the minor complainants. As assignee and guardian he executed the release, It is necessary, therefore, to look to his power in each of these characters.
The husband had the right to receive from the defendants his wife’s distributive share of her father’s personal estate ; *such a reduction into possession would defeat the wife’s equity. So, too, the husband might assign it; and if the assignee for a valuable consideration can and does reduce it into possession without the aid of the Court of Equity, her equitable rights would not be allowed to be set up against his legal estate. Clancy’s Rights of Married Women, 445. In all cases where the wife’s equity, and the husband’s or his assignee’s right to possession, are brought into collision, the wife, or the Court for her, must make the question ; if she is content that the question should not be made, the defendants who may be in the possession of her funds cannot make the objection. — After there is a recovery at the instance of the assignee, and before he reduces the fund into actual possession, the Court might interfere and set up the wife’s equity. The assignee of the husband has, in equity, all the rights which he has; in it, he is regarded to all intents and purposes as the owner of the funds assigned. His release will operate to the same extent which the husband’s would. The husband-.may release the chose in action of his wife, and his release would at all events bar and prevent any recovery upon it during his life. I think it would operate as an entire discharge. Either point of view is enough for this case ; for if the release is only good for the life of the husband, it is a discharge of the witness from any present interest in the event of the suit— it may be that a .future possible interest may exist, but this would be •only an objection to the credit and not the competency.
A guardian, as the officer of the Court of equity, is charged with the *279 the preservation of all the rights and interests of the ward. He cannot, however, generally, change the nature or diminish the capital of the estate; but with this exception, he is authorized to do any act for the infant which a prudent man’ in the management of his own business would do. Such an act must of necessity fall within the rule which is, I think, well stated in Bingham’s Law of Infancy, 152, to be, that “ it seems generally that those acts of the guardian are binding on the infant, which are for the benefit of the infant, and for which the guardian can account; for so far his authority extends.” In Milner v. Lord Harewood, 18 V. Jr. 259—it *was held that an act of the guardian without authority, if beneficial to the infant, would be sustained.
The release here is an act for which the guardian can and must account, if he thereby fails in recovering the shares of his wards. No loss can result to them in this respect, for his release makes him personally liable for the fund; and it is to be presumed that he has given good security for the discharge of his duties. So far I think there is no difficulty in allowing his release to prevail. It does not change the nature or diminish the capital of his ward’s estate in the hands of the defendant or in those of the guardian; they are alike money, and the amount continues the same. The release is only the means of reaching the justice of the case, and fixing the defendants’ liability. It may be (and I ought so to conclude) that the defendants’ liability is a better security for the wards of the guardian, than Mrs. Huey’s. The release is, I think, good, and the witness competent.
2. This brings up the question, are the administrators of John Huey liable to account for the proceeds of the land, and also for the amount received on the bond ? In the case of Adair v. Shaw, 1 Sch. & Lef. 255, Lord Chancellor Redesdale decides the very question as to the general liability of the surviving husband or his representatives, (if dead) to account for the funds of an intestate which came to his hands during coverture, through the administration of Ms wife. He says, “but on principle, and what I conceive to be the established rule of Courts of Equity, I think there can be no doubt that Mrs. Shaw is responsible, and that the assets of Mr. Shaw are responsible to this extent, viz. : Mrs. Shaw for the whole, and Mr. Shaw’s assets for whatever came into his hands, that is what came to the hands of himself or his wife during the coverture, except so far as Mr. Shaw left assets in specie of the testator, after his death, which might have come into the hands of Mrs. Shaw: whatever might have been so left he would not have been accountable for, but she alone would.”
Taking it to be well settled law, that the husband or his administrator is accountable for the funds of the wife’s intestate which may come to his or her hands during coverture, and * which may be not left in specie at the husband’s death and come to the wife’s possession, it is only necessary to inquire how the facts stand in this case. It seems that Mrs. Huey with the funds of the estate of Blackburne purchased a tract of land and took the title in her own name ; that subsequent to her second marriage she and her husband sold it, and he received the proceeds of the sale. It is plain, on authority and principle, that on the purchase of the land by the administratrix of Blackburne with the funds of his estate, a trust resulted in favor of the estate : and the land or its *280 proceeds when sold, were the assets of the intestate Blackburne. Watson, Ordinary, v. Whitten,(a) decided at this place, May Term, 1832. The proceeds of the land being assets and coming to Mr. Huey’s hands during coverture he is properly charged with the amount thereof. The bond is still plainer, for that was given for the money collected and loaned by the administratrix, as was her duty; the amounts received upon it by Mr. Huey, were received by him in a plain course of administration, viz.: to receive and let to interest the money of the intestate— and he is accountable for the sums which he so received.
3. I think there can be no plainer proposition than that the defendants, the administrators of Huey, are not entitled to charge and be allowed against Blackburne’s estate, the counsel fee paid to their solicitor in this case. The g'eneral rule in equity is settled in so many cases that it has ceased to be necessary to refer to them to establish its existence — that an executor or administrator who litigates in good faith is entitled to be reimbursed out of the estate for his costs and expenses. The estate represented by the executor or administrator and legally presumed to be benefitted by the litigation, is the one which must bear the expenses. In this case the defendants the administrators of Huey represent his estate alone, and for its benefit their defence was made, and out of it the counsel fee is properly payable. Blackburne’s estate is not represented by them, they stand in no relation of confidence to it, their claim and defence are hostile to the rights of the complainants, and were an injury instead of a benefit to the estate represented by the complainants. The *aH°wance °f the counsel fee out of Blaekburne’s estate was improper.
It is ordered and decreed that the Chancellor’s decree be reformed as to the allowance of the counsel fee of defendants’ solicitor out of the estate of Wm. Blackburne; in all other respects it is affirmed, and the' Commissioner’s report confirmed generally.
Johnson and Harper, Js., concurred.

 Not reported.